UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGINA ADAMS,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

CASE NO. 2:13-cv-14848

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

This matter is before the Court on the parties' cross-motions for summary judgment. Plaintiff, Regina Adams, alleges that an Administrative Law Judge improperly denied her Social Security disability benefits. Specifically, Plaintiff alleges both that the ALJ ignored a Vocational Expert's testimony that no work would be available given her limitations and that the ALJ failed adequately to consider the limiting effects of her carpal tunnel syndrome. (Doc. 9.) Defendant, Commissioner of Social Security, argues that the ALJ's decision is supported by substantial evidence and that Plaintiff has waived appeal of these issues due to inadequate argumentation. (Doc. 13.) For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**II.   STATEMENT OF FACTS**

Plaintiff filed a Title II claim for a period of disability and disability insurance benefits, alleging an amended disability onset date of January 4, 2006. (Tr. 102.) This claim was originally denied by ALJ John L. Christensen in an unfavorable decision dated November 6, 2009, which was later adopted as the Commissioner's final decision when the Social Security Administration's Appeals Council denied further administrative review on April 1, 2011. (Tr. 1, 14.) Plaintiff subsequently filed suit against the Commissioner before this Court, and the parties stipulated to remand the claim for further proceedings before an ALJ. (Tr. 213.)

A second hearing before ALJ John A. Ransom was conducted on October 31, 2012. (Tr. 179.) Plaintiff appeared at the hearing and testified to the limiting effects of her medical condition. (Id.) On December 12, 2012, ALJ Ransom issued an unfavorable decision denying Plaintiff's claim. (Tr. 176.) This decision became the final decision of the Commissioner when, on September 27, 2013, the Appeals Council denied Plaintiff's request for further administrative review because Plaintiff had not filed timely exceptions to ALJ Ransom's decision. (Tr. 168.) The present suit followed.

The ALJ found that Plaintiff suffers from the following severe impairments: carpal tunnel syndrome, left knee degenerative joint disease, and shoulder pain. (Tr. 181.) Accordingly, the ALJ determined that Plaintiff had the following residual functional capacity ("RFC"): "light work as defined in 20 CFR 404.1567(a) [sic] except for any use of air or vibrating tools, no use of foot controls with left lower extremity, and only occasional use of upper extremities." (Tr. 185.) In light of this RFC, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. 186.) However, based on Vocational Expert ("VE") Timothy Shaner's testimony, the ALJ concluded that Plaintiff

2

remained capable of performing a number of unskilled occupations at the light exertional level, including usher, counter clerk, and sales attendant. (Tr. 187.)

According to Plaintiff's Function Report, she typically spends her day showering, taking medication, watching television, reading, and napping. (Tr. 117.) She cares for her son with the help of her mother. (Tr. 118.) She reports no difficulties with dressing or personal care, other than with curling her hair. (Id.) Although Plaintiff can drive, shop, and perform light household chores such as cooking and making her bed, she relies on her mother to do laundry and other housekeeping. (Tr. 118-120) Plaintiff states that she is able to lift up to eight pounds; cannot reach above her head; and cannot sustain a forceful grip or repetitive movements. (Tr. 122.) She uses a wrist brace for her hands, which she wears at night to bed and sometimes during the day when she experiences tingling in her hands. (Tr. 123.)

The medical evidence supports Plaintiff's allegation that she began to suffer from her impairments by the alleged onset date of January 2006. From September to October 2003, Plaintiff attended occupational therapy sessions at Hurley Rehabilitation Services for symptoms related to her carpal tunnel syndrome. (Tr. 135.) The therapist noted that Plaintiff exhibited moderately to severely limited grip strength and advised her to perform daily home exercises and to follow up with her treating physician. (Id.)

Plaintiff has received regular treatment for carpal tunnel syndrome and knee pain from her primary care physician, Elmahdi Saeed, M.D., between September 2005 through at least October 2012. (Tr. 148-66; Exs. B7F, B9F.) With respect to Plaintiff's carpal tunnel syndrome, Dr. Saeed has consistently noted positive Phalen's maneuver and Tinel's sign, as well as sensory loss in Plaintiff's hands. (Tr. 148-154.) Dr. Saeed

3

prescribed wrist support treatment and NSAIDs for the pain, suggested work restrictions on October 13, 2005, and completed disability forms on August 29, 2006 – however, the precise restrictions recommended by Dr. Saeed have not been included in the record. (Id.) In June 2007, when Plaintiff complained that she had difficulties with opening doors and using buttons, Dr. Saeed began prescribing Darvocet and a muscle relaxant for her carpal tunnel-related pain. (Tr. 149.)

On September 7, 2005, Plaintiff complained to Dr. Saeed of worsening left knee pain, and he noted some swelling. (Tr. 155.) At this time, Dr. Saeed prescribed only over-the-counter pain relievers and referred Plaintiff to an orthopedic specialist. (Id.) An MRI of the left knee taken on September 14, 2005, revealed mild degenerative changes, with small osteophytic spurs, chondromalacia of the patella, and moderate joint effusion. (Tr. 147.) Plaintiff began treating with Family Orthopedic Associates in September 2005 for her left knee osteoarthritis. On September 26, 2005, she received a cortisone injection to her knee, which provided "almost immediate relief," but began to wear off by January 2006. (Tr. 144-45.) Plaintiff then began a series of weekly viscosupplement injections between January 27 and February 24, 2006. (Tr. 139-43.) Plaintiff appeared to be doing well until an office visit on April 12, 2006, when she reported that she had experienced an acute arthritic flare in her knee after wearing high heels. (Tr. 138.) This flare was treated with a cortisone injection, which provided some relief by the time Plaintiff left the office. (Id.)

On October 8, 2007, Plaintiff underwent a consultative examination by John Tofaute, M.D. (Tr. 157.) Plaintiff reported to Dr. Tofaute that she had refused surgery for her carpal tunnel in spite of EMG and nerve conduction studies that were said to

4

show "moderate to severe carpal tunnel syndrome bilaterally." (Id.) Plaintiff also reported that she was independent in driving, feeding, bathing, and dressing, but that she had difficulties lifting heavier objects when cooking. (Id.) She complained of tingling in her fingertips and reported wearing her wrist splints to bed to minimize throbbing and the tendency of her hands to fall asleep and tingle. (Id.) Plaintiff did not report any lower extremity problems. (Tr. 158.) Inspection of Plaintiff's hands revealed no swelling or visible atrophy. (Id.) Her opposition strength in both hands was good and equal. (Id.) Both Phalen's maneuver and Tinel's sign were positive in her left hand but not in her right. (Id.) Dr. Tofaute observed that Plaintiff "appeared to have good facility of each hand, independently picking up small objects, such as coins." (Id.)

Plaintiff's hand pain and left knee pain continued through the date last insured, December 31, 2008. Treatment for her carpal tunnel remained consistent between April 2008 and January 2009, with Dr. Saeed prescribing over-the-counter pain relievers, Darvocet, muscle relaxants, and new wrist splints. (Tr. 162-66.) Likewise, treatment for her left knee osteoarthritis remained the same, with Plaintiff receiving another cortisone injection and a prescription for a knee brace on January 10, 2008. (Tr. 167.) According to the January 2008 report, Plaintiff appeared not to have required follow-up care for her left knee pain since she had received the cortisone injection in April 2006. (Id.) More recent medical records show no further complaints related to her knee. (See Exs. B7F, B9F.)

### III.  STANDARD OF REVIEW

5

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 508 (6th Cir. 2006). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007).

**IV. DISCUSSION**

**A. Residual Functional Capacity**

To the extent that Plaintiff challenges the RFC, the record demonstrates that it is supported by substantial evidence. The ALJ identified and discussed treating

6

physicians' office visit notes and observations made during examinations. (See Tr. 182-184.) Moreover, the ALJ afforded some weight to the opinions of these treating physicians and significant weight to Dr. Tofaute. (Tr. 186.) The ALJ explained that he afforded only some weight to the treating physicians because although Dr. Saeed indicated that Plaintiff was placed on work-related restrictions, he did not indicate she was totally incapable of performing work activity. (Id.) Therefore, consistent with Social Security Ruling (SSR) 96-8p (1996), the ALJ properly considered and addressed all medical source opinions, while Plaintiff has failed to identify what aspects of the medical opinions the decision does not sufficiently address.

Likewise, Plaintiff fails to identify any objective evidence that contradicts the RFC. She argues, based on her subjective complaints, that she is limited to lifting no more than five to six pounds, cannot open doors, cannot button clothing, cannot grip anything, and drops things frequently. The ALJ adequately considered Plaintiff's subjective complaints (Tr. 181-82) and determined that the objective evidence did not support such a restricted lifestyle (Tr. 186). The ALJ reasoned that Plaintiff's treating physicians had treated her conservatively using only medication and a wrist brace; there was no record of any physician recommending surgery. (Id.) Furthermore, Plaintiff's reported activities of daily living, including grocery shopping and attending church services, were inconsistent with a severely restricted lifestyle precluding any type of work. (Id.)

Indeed, the RFC appears to accommodate Plaintiff's left knee osteoarthritis by limiting her to light work, which includes lifting and carrying up to ten pounds frequently and up to twenty pounds occasionally, and walking and/or standing up to six hours per

7

day.  See 20 C.F.R. 404.1567(b).  The RFC further limits Plaintiff to no use of foot controls with the left lower extremity.  Plaintiff's carpal tunnel syndrome is accommodated through the RFC's restriction to only occasional use of upper extremities and no use of air or vibrating tools.  In light of the medical reports and opinions, this RFC is supported by substantial evidence.

### B.  Step Five Analysis

Once it is determined that Plaintiff lacks the capacity to perform past relevant work, the burden of proof shifts to the Commissioner to show that Plaintiff is capable of performing other substantial gainful activity existing in the national economy.  Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).  To satisfy this burden, there must be "a finding supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." Id. (quoting O'Banner v. Sec'y of Health, Educ. & Welfare, 587 F.2d 321, 323 (6th Cir. 1978).  Substantial evidence may consist of VE testimony in response to a "hypothetical" question only if this question accurately portrays the plaintiff's physical and mental impairments.  Id.

At the hearing, the hypothetical posed to the VE accurately mirrors the RFC.  The VE testified that an individual with those restrictions would be capable of performing a number of jobs at the light exertional level, such as usher, counter clerk, and sales attendant.  (Tr. 203-04.)  Additionally, the VE testified that Plaintiff would be capable of performing the sedentary position of surveillance system monitor.  (Tr. 204.)  Because the hypothetical accurately portrays Plaintiff's physical impairments, the ALJ was justified in relying on this testimony as substantial evidence.

Plaintiff objects that the ALJ ignored VE testimony that no work would be available in light of the hypothetical posed. However, the hypothetical that elicited such a response directed the VE to assume all of the Plaintiff's testimony regarding her limitations – including a need for two two-hour naps per day – to be true. (See Tr. 197-98, 203.) Moreover, Plaintiff's argument cites to the hearing transcript from the first hearing, conducted by ALJ Christensen on September 3, 2009. As discussed above, ALJ Christensen's decision has already been appealed and was remanded by this Court as stipulated by the parties. A new hearing took place on October 31, 2012, and a new decision was rendered by ALJ Ransom. Accordingly, discussion of the first hearing has no bearing on the present case. Therefore, the ALJ's Step Five analysis identifying jobs that Plaintiff would be capable of performing is proper and supported by substantial evidence.

## V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Date:     November 30, 2014                          s/Marianne O. Battani
                                                    MARIANNE O. BATTANI
                                                    United States District Judge


CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on November 30, 2014.

                                                    s/ Kay Doaks
                                                    Case Manager